The order and judgment of September 26, 1892, should be. reversed, with costs.

Order affirmed.

## Moore v. New York Central, etc., R. Co.

### (Buffalo Superior Court—General Term, December, 1892.)

In an action to recover for injuries received by being struck by a passing railroad train at a street crossing, the evidence for plaintiff tended to show that the train was being run at a rapid rate of speed; that no warning of any kind was given of the approach of the train; that the crossing was in a populous part of a city which was much traveled and that the night was quite dark.   Plaintiff and his companion were in a one-horse carriage the sides of which were closed with curtains somewhat obstructing their view in those directions.   At the crossing, which they approached from the east there were five tracks, the two westerly ones belonging to defendant; and as they approached the first track going west they stopped their horse, looked up and down the tracks and seeing nothing to prevent their crossing the remaining tracks in safety, made haste to cross and were struck and injured on the last track of defendant's road by a passing train.   It also appeared, that the view to the north along the tracks for a long distance from a point about one hundred and fifty feet east of them was unobstructed except as to

an electric light near the crossing which it was claimed might have affected the view to some extent, and it was from that direction that the train came which caused the injury to plaintiff. *Held,* that whether defendant exercised due care in the running of the train was properly submitted to the jury.

Defendant proved that no flagman or other person to give warning was kept at the crossing. *Held,* that it could not complain of a charge that the absence of such a person was a circumstance which the jury might consider in determining whether or not defendant operates the train with due care.

While the duty of one crossing a railroad track to look and listen is a continuous one, he is bound to exercise ordinary sense, prudence and capacity and to use his eyes and ears so far as he has opportunity, the circumstances and actual condition of things at the time must be considered in measuring the opportunity.

Evidence considered and *held,* that plaintiff could not be said to have been negligent as matter of law.

APPEAL by defendant from a judgment entered upon the verdict of a jury against it, and from an order denying a motion for a new trial.

*James F. Gluck,* for defendant (appellant).

*John Cunneen,* for plaintiff (respondent).

WHITE, J. On the 5th of November, 1889, the plaintiff, with a companion named John Hughes, left East Buffalo about seven o'clock in the evening to come to their homes in the city, in a one horse carriage. The sides of the carriage were closed with curtains, which to some extent obstructed their view in those directions. Their route lay along Eagle street, which is crossed by the tracks of the defendant's railroad and by those of the Lake Shore and Michigan Southern railroad, the defendant having two and the Lake Shore three tracks across the street at that point. The tracks of the defendant are west of those of the Lake Shore. These five sets of tracks and the distance between them, covered a space of about seventy feet on Eagle street, and they cross the street practically at right angles. The view to the north, along the tracks for a long distance from a point about 150 feet east of them was unobstructed, except as to an electric light near the

crossing, which, it is claimed, may have affected it to some extent, and it was from that direction that the train came which caused the injury complained of. As the plaintiff and his companion approached the crossing, this electric light and the structure to which it was affixed was for an indefinite space of time between them and the coming train. When on or within a few feet of the easterly, or first track to be crossed by them, as claimed by the plaintiff and Hughes, they stopped their horse and leaned forward and looked up and down the track and discovered nothing to prevent their crossing the remaining tracks with safety, whereupon they made haste to cross, and were struck and injured on the second of the defendant's tracks.

The evidence on the part of the plaintiff tended to prove that the train in question, at the time of the accident, was being run at a rapid rate of speed, at least twenty-five miles an hour, according to the estimate of one of the witnesses. Evidence was also given tending to prove that no warning of any kind was given of the approach of the train; that the crossing was in a populous part of the city and that that part of Eagle street is much traveled. The defendant was bound to exercise such reasonable precaution in the running of its trains as ordinary prudence dictated to protect travellers along the street from injury, and the question whether it in fact exercised due care on this occasion was properly left to the jury. Negligence on the part of the defendant is conclusively established by the verdict. *Thompson* v. *New York, etc., R. Co.*, 110 N. Y. 636; *Swift* v. *Staten Island, etc., R. Co.*, 123 id. 645. If it be true, as claimed by the plaintiff, that as he approached the first tracks he did exercise due care to ascertain whether or not it was safe to cross, and having satisfied himself that it was, he was in duty bound to do just what he claims to have done, that is to hasten across to a place of safety.

The trial judge instructed the jury that the defendant was not charged by law with the duty of having a flagman or person to give warning of approaching trains at this crossing, and that the absence of such a person was a circumstance which

4

they might consider in determining whether or not the defendant operated the train with due care. To this part of the charge the defendant excepted, and in the same connection requested the court to charge, that as the plaintiff knew no flagman was kept at this crossing he did not look for one, and that the presence or absence of a flagman in this case on this occasion would be immaterial. The court refused and the defendant excepted to the refusal.

As to the exception to the charge it may be said that although the defendant was bound by law neither to ring its bell, blow its whistle, or keep a flagman at this crossing, yet it was bound to give some notice and warning of the approach of this train and what notice or warning was sufficient was a question for the jury. Proof of the facts as to what precautions were taken was necessary to enable the jury to determine the question. The fact that no flagman or other person to give warning was kept at this crossing was proven by defendant itself and, therefore, it cannot complain of its consideration by the jury.

As to the request to charge, the sense of it is that because the plaintiff knew no flagman was regularly stationed at this crossing his conduct would not have been affected or influenced by the presence of one on this occasion, if one had been present.

The effect which the presence of a flagman might have had upon the conduct of the plaintiff if proper for consideration at all, was for the jury and not for the court.

The charge of the court as to the right of the jury to consider the speed of the train; as to the degree of care incumbent upon the defendant in its management, and as to whether or not the train was late on this occasion, is criticised and excepted to by the defendant's counsel, but we are unable to discover any substantial error in the charge in any of these respects.

The speed of the train and whether any warning of its approach was given, were questions not only proper but necessary to be answered by the jury in determining whether or not the defendant was guilty of negligence.

It was the duty of the defendant to give suitable warning of the approach of this train and to so regulate its speed as to apprise the plaintiff of its approach in time to enable him to avoid injury, and the question as to whether defendant exercised the degree of care required of it on this occasion was, as we think, fairly submitted to the jury.

The counsel for the defendant excepted to the refusal of the court to charge specifically: "that if the jury believe that they" (Moore and Hughes) "did not look from the time they struck the Lake Shore track until they got struck, although they had an opportunity of looking, and seeing the train if they had looked, then they must find that the plaintiff was guilty of negligence."

Upon this subject the court had already charged the jury very fully to the effect that the law imposed upon the plaintiff the duty of listening, and looking both ways as he approached this crossing and that if he could by the exercise of those precautions have discovered the approach of this train in time to have avoided the injury he could not recover, and its refusal to repeat the charge was proper. *Raymond* v. *Richmond,* 88 N. Y. 671.

An exception was also taken by the defendants to the refusal of the court to charge that the evidence in the case is undisputed that the horse ran into the train and caused the injury complained of. It is hardly worth while to discuss this question at length, because it is impossible that, as the evidence tended to show, after the accident, one of the wheels of the buggy could have been found on the front of the engine, and the buggy have been all smashed to pieces and the horse have had one leg cut off, and that the remains of the buggy could have been found west of the track on which the accident occurred, as the result of an attempt by the plaintiff's horse to get through or over the train while it was running at the rate of twenty-five miles an hour. We think the jury was alone competent to decide the precise or probable cause of the accident, and that their finding upon that question must stand.

The serious contention on the part of the defendant is that

the plaintiff should be held to have been guilty of contributory negligence, notwithstanding his testimony that he looked and listened, on the theory that if he had looked he must have discovered the danger in time to have avoided it; undoubtedly the duty of looking and listening is a continuous one while crossing a railroad track, and a person so crossing is bound to exercise ordinary sense, prudence and capacity, and to use his eyes and ears so far as he has opportunity, but the circumstances and actual condition of things at the time must be considered in measuring the opportunity. It is urged that because the plaintiff and his companion testified that as they approached this crossing they saw smoke ascending towards the heavens several hundred feet away in the direction of the city, they must have been able to see a like distance up and down the railroad tracks and that the night, and the absence of obstruction must have been such as would have enabled them to avoid this accident if they had exercised due care.

When it is remembered that the evening of this accident may have been quite dark; that the view to the north may have been somewhat obstructed by the electric light near the crossing, and its effect upon surrounding objects; that the train which caused the injury may have been drawing to the point of collision at the rate of forty feet or more in each second of time, and that the mind of the plaintiff may not have operated with that rapidity which seems to have been sometimes assumed as necessary in such cases, we cannot, as matter of law, attribute negligence to the plaintiff. While diligence to discover danger in such case may reasonably be required, no absolute, iron-ribbed standard of intelligence or foresight has yet been adopted by the courts as applicable to all men, under all circumstances. We do not deem the *Werinowski* case an authority against the plaintiff. The facts in that case were noticeably different from those in this one. Among other things, it appeared in that case, that there was absolutely no obstruction to the vision. In this case, the electric light and its effect upon surrounding objects may have obstructed the view to the north to some extent. In that case,

there was no evidence that the person injured looked or listened, or took any precaution whatever to avoid danger. In this case, the plaintiff did look and listen as he reached the crossing, and he appears to have taken all the precaution required of him. In that case, the train or engine and tender were moving at the rate of four miles an hour. In this case the train was moving at the rate of twenty-five miles an hour. In that case, the party injured was on foot, with nothing to do but look and listen. In this case, the plaintiff was compelled to pay some attention to the management of his horse. To hold that the plaintiff was bound to take separate and independent observations on his approach to each succeeding railroad track, after or while passing over the preceding one, before proceeding, would involve a proposition which, it seems to us, no court will care to announce as a rule of law. The jury was justified in finding that the plaintiff took care, with all his senses and all his powers, and was as sure as he might be from sight and hearing when he arrived at the crossing that it was prudent to cross, and that he then started to hasten over, as the law required him to. No reversible error is disclosed by the record, and therefore, the judgment and order appealed from should be affirmed, with costs.

Titus, Ch. J., concurs. Hatch, J., not sitting.

---

Hughes *v.* New York Central, etc., R. Co.

(Buffalo Superior Court — General Term, December, 1892.)

Appeal by defendant from a judgment entered upon the verdict of a jury against it, and from an order denying a motion for a new trial.

*James F. Gluck,* for defendant (appellant).

*John Cunneen,* for plaintiff (respondent).

White, J. The facts in this case are substantially the same as those in the case of Daniel W. Moore against the same